IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | No. 3:25-CR-189-E |
| | § | |
| ROBERT WILSON KING. | § | |
|     a/k/a Rob Gutierrez, | § | |
|     Defendant, | § | |

## DEFENDANT'S MOTION TO DISMISS THE INDICTMENT

Mr. Robert Wilson King, by and through undersigned counsel, Assistant Federal Public Defender Shery Kime-Goodwin, moves this Court to dismiss the Indictment pursuant Federal Rule of Criminal Procedure 12(b). Mr. King moves for dismissal of the pending Indictment because (1) each alleged threat constitutes speech protected by the First Amendment and (2) Counts Three, Four, and Five fail to allege an offense under 18 U.S.C. § 875(c). In support of his Motion to Dismiss and in accordance with the Local and Federal Rules of Criminal Procedure, this Motion is accompanied by a brief that sets forth Mr. King's contentions of fact and law, as well as his argument and authorities.

Respectfully submitted,

/ s/ Shery Kime-Goodwin
Shery Kime-Goodwin
Texas Bar No. 00792624
Assistant Federal Public Defender
525 S. Griffin St., Ste. 629
Dallas, TX 75202
214-767-2746/214-767-2886 (fax)
shery_kime-goodwin @fd.org

BRIEF IN SUPPORT OF MOTION TO DISMISS

TABLE OF CONTENTS

BRIEF IN SUPPORT OF MOTION TO DISMISS ................................................ 1

I.    Statement of Facts ........................................................................ 4

II.   Argument .................................................................................... 7

   A.    Legal framework ...................................................................... 8

      1.   Count One ......................................................................... 9

      2.   Count Two ........................................................................ 12

      3.   Counts Three, Four, and Five ............................................... 16

III.  Motion for Leave to File a Reply Brief ............................................ 20

IV.   Conclusion ................................................................................. 20

<u>TABLE OF AUTHORITIES</u>

Cases

Ashcroft v. American Civil Liberties Union, 535 U.S. 564, 573 (2002).......................8
Beauharnais v. Illinois, 343 U.S. 250, 254-255 (1952)................................................9
Boos v. Barry, 485 U.S. 312, 322 (1988)......................................................................8
Brandenburg v. Ohio, 395 U.S. 444, 446, 447-49 (1969)..................................9, 15, 16
Chaplinsky v. New Hampshire, 315 U.S. 568, 571-72, 573( 1942) ............................9
Counterman v. Colorado, 600 U.S. 66, 73, 74, 76 (2023)....................................10, 15
Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 498 (1949)..............................9
Hustler Magazine, Inc. v. Falwell, 485 U.S. 46, 56 (1988))........................................8
New York Times v. Sullivan, 376 U.S. 254, 270 (1964))............................................11
Noto v. United States, 367 U.S. 290, 297-98 (1961).................................................15
Roth v. United States, 354 U.S. 476 (1957)...............................................................9
Texas v. Johnson, 491 U.S. 397, 414 (1989).............................................................8
United States v. Bagdasarian, 652 F.3d 1113, 1119, 1122 (9th Cir.2011)...............17
United States v. Howell, 719 F.2d 1258, (5th Cir. 1983).....................................10, 11
United States v. Jubert, 139 F.4th 484, 487-88 (5th Cir. 2025)..........................13, 14
United States v. McMillan, 53 F.Supp.2d 895, 903-05 (S.D. Miss. 1999).................10
United States v. Myers, 104 F.3d 76, 79 (5th Cir. 1997).........................................10
United States v. O'Dwyer, 443 Fed. Appx 18, 19-20 (5th Cir. 2011).............10, 13, 14
United States v. Stevens, 559 U.S. 460, 468 (2010).................................................8
United States v. Wheeler, 776 F.3d 736, 746 (10th Cir.2015) .................................17
Virginia v. Black, 538 U.S. 343, 359, 362 (2003).............................................10, 15
Virginia Board of Pharmacy v. Virginia Citizens Consumer Council, Inc., 425 U.S. 748 (1976).................................................................................................................9
Watts v. United States, 394 U.S. 705, 706, 708 (1969)...........................9, 10, 11, 12

United States Constitution
U.S. Constit. amend. I ............................................................................................8

Statutes
18 U.S.C. § 373(a) ...............................................................................................20
18 U.S.C. § 871(a). ...................................................................................4, 5, 7, 8
18 U.S.C. § 875(c).....................................................1, 4, 5, 7, 8, 12, 13, 14, 19

Other Authorities
Hell to Pay, thevillageidiom.org ......................................................................17, 18

Rules
Fed. R. Crim. P. 12(b) ..........................................................................1, 7, 19, 20

Statement of Facts[1]

 Due to five statements made on social media, Mr. King stands charged in a five-count indictment. Doc. 17. In Count One, Mr. King is charged with Threats Against the President, in violation of 18 U.S.C. § 871(a). Id. at 1. In Counts Two through Five, Mr. King is charged with Interstate Communications with Threats, in violation of 18 U.S.C. § 875(c). Id. at 2.

 Count One arises from a February 28, 2025, Instagram post reflecting Mr. King's belief that President Trump was acting as a traitorous "pawn of the Russian government" who should be put to death for his actions. Together, with a follow-up post by Mr. King time-stamped a minute later, the posts read:



Ex. 1.

 Counts Two and Three arose from posts Mr. King made on March 27, 2025. On that date, Mr. King posted to Facebook the following in the aftermath of the arrest of a Massachusetts student by ICE agents:

---

[1] King's recounting of facts alleged by the prosecution are not to be considered admissions. The factual recitation, as the government alleges, is made for the purpose of the Motion to Dismiss only.



Ex. 2. That same day, to Instagram, Mr. King also posted the following story:



Ex. 3.

Three days later, on an Instagram story adorned by a Soviet-inspired rendering of the "GOP," Mr. King reiterated the call that others should resist ICE in their neighborhoods:



Ex. 4. This post serves as the basis of the charge in Count Four.

Finally, the next day, replying to an Instagram story by the governor of Minnesota regarding students being detained by ICE in that state, Mr. King posted:



Ex. 5. This post resulted in the charge in Count Five.

6

The government does not allege that Mr. King directed these posts to the President or any particular ICE agent, nor is there any allegation that Mr. King attempted to contact them via direct message, email, telephone, or the mail. Nonetheless, the government alleges that these messages violate 18 U.S.C. § 871(a) and 875(c).

I.    ARGUMENT

First, each count of the indictment should also be dismissed because Mr. King's rights under the First Amendment protect each statement detailed in the Indictment. The statutes listed in the Indictment—18 U.S.C.§ 871(a) and 875(c)—are unconstitutional as applied to Mr. King, as they criminalize Mr. King for speech that is protected by the First Amendment. Mr. King's posts do not fall into the narrowly limited classes of speech that are unprotected by the First Amendment. Even though the posts could be considered in poor taste or offensive, Mr. King's speech is entitled to First Amendment protection.

Second, Counts Three through Five should be dismissed for the failure to allege an offense. These counts charge Mr. King with transmitting "threats to injure the person of another," but the statements listed in these counts do not include any actual threats by Mr. King. At most, they might be considered solicitation of others to take up arms against ICE agents, but such solicitation falls outside the scope of the statute Mr. King is charged with violating.

As such, the Court should dismiss the Indictment pursuant to Fed. R. Crim. P. 12(b).

A. Legal framework

The First Amendment to the United States Constitution provides that, "Congress shall make no law ... abridging the freedom of speech." U.S. Const. amend. I. "As a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." United States v. Stevens, 559 U.S. 460, 468 (2010) (quoting Ashcroft v. American Civil Liberties Union, 535 U.S. 564, 573 (2002)). "If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." Texas v. Johnson, 491 U.S. 397, 414 (1989).

The First Amendment protects speech even when the subject or manner of expression is uncomfortable, unconventional or challenges the standards of good taste. "[I]n public debate our own citizens must tolerate insulting, and even outrageous speech in order to provide 'adequate 'breathing space' to the freedoms protected by the First Amendment.'" Boos v. Barry, 485 U.S. 312, 322 (1988) (citing Hustler Magazine, Inc. v. Falwell, 485 U.S. 46, 56 (1988)). The Supreme Court has consistently classified emotionally distressing or outrageous speech as protected, especially where that speech touches on matters of political, religious, or public concern. See e.g., Stevens, 559 U.S. 460 (holding a federal statute criminalizing depictions of animal cruelty unconstitutional under the First Amendment protection of speech); Hustler Magazine, 485 U.S. 46 (holding that a cartoon depicting Falwell and his mother in Hustler magazine was entitled to First Amendment protection).

The First Amendment, of course, is not unlimited. "There are certain well-

8

defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem."[2] Chaplinsky v. New Hampshire, 315 U.S. 568, 571-72 (1942).

### A. All five counts should be dismissed because Mr. King's social media posts constituted protected free speech.

The government alleges that Mr. King's social media posts amounted to threat of violence against, first, the President and, second, unspecified individuals. However, to survive Constitutional muster, the Government must show that Mr. King's speech rose to the level of a true threat. The government cannot meet this burden.

### 1. Count One

Count One should be dismissed because Mr. King's February 28, 2025, Instagram Story expressed Mr. King's willingness to perform the services of an executioner under the hypothetical condition of President Trump being administered capital punishment for treason as a Russian agent. This purely fantastical and political post, predicated on a wildly implausible conditional scenario and broadcast indiscriminately onto the internet, cannot be considered a true threat.

Among the categories of speech falling outside the bounds of First Amendment protection is that of the true threat. Watts v. United States, 394 U.S. 705 (1969).

---

[2] These categories of unprotected speech include:
    (a) obscenity, Roth v. United States, 354 U.S. 476 (1957);
    (b) defamation, Beauharnais v. Illinois, 343 U.S. 250, 254-255 (1952);
    (c) fraud, Virginia Board of Pharmacy v. Virginia Citizens Consumer Council, Inc., 425 U.S. 748 (1976);
    (d) incitement, Brandenburg v. Ohio, 395 U.S. 444, 447-49 (1969);
    (e) true threats, Watts v. United States, 394 U.S. 705 (1969); and
    (f) speech integral to criminal conduct, Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 498 (1949).

Distinguishing unprotected speech from "jests, 'hyperbole', or other statements that when taken in context do not convey a real possibility that violence will follow . . . ," Counterman v. Colorado, 600 U.S. 66, 74 (2023) (internal citations omitted), is the term "true." Unlike protected speech, true threats involve "serious expressions conveying that a speaker means to commit an act of unlawful violence." Id. (quoting Virginia v. Black, 538 U.S. 343, 359 (2003)). "A true threat is a serious one, not uttered in jest, idle talk, or political argument." United States v. Howell, 719 F.2d 1258, (5th Cir. 1983) (citing Watts v. United States, 394 U.S. 705 (1969)).

The Fifth Circuit's approach to true threats involves considering whether a communication "in its context would have a reasonable tendency to create apprehension that its originator will act according to its tenor." United States v. Myers, 104 F.3d 76, 79 (5th Cir. 1997). Courts consider the circumstances and facts surrounding the statements, see United States v. McMillan, 53 F.Supp.2d 895, 903-05 (S.D. Miss. 1999); United States v. O'Dwyer, Crim. No. 10-034, 2010 WL 2606657, at *2 (E.D. La. June 24, 2010), contemplating such factors as the statements' tone, frequency, and whether the statements are made publicly or privately. McMillan, 53 F.Supp.2d at 905.

Two cases aptly illustrate the difference between a true threat made against the President and a statement of political hyperbole. In United States v. Howell, the defendant was convicted of making threats to kill the President. 719 F.2d 1258 (5th Cir. 1983). During an interview with an FBI agent, Howell said he had a .357 pistol, that he will kill the President if he gets a chance, and "I would make my way to

Washington and kill him – I will kill the President." Id. at 1260. He later wrote a letter to the FBI agent reiterating his threats to kill the President. Id. At the time of arrest, Howell said "he still felt the same and would shoot the President if he could get away." Id. The Fifth Circuit found Howell's statements contained specific, unambiguous and "apparently quite serious" intention to kill the President and, therefore, qualified as true threats and beyond First Amendment protection. Id. at 1261.

In contrast stands Watts v. United States, 394 U.S. 705 (1969). Mr. Watts attended a political rally, where he discussed the draft, stating: "If they ever make me carry a rifle the first man I want to get in my sights is L.B.J." 394 U.S. 705, 706 (1969). Based on this statement, he was charged with knowingly and willfully threatening the President. The Supreme Court reversed his conviction holding that the statement, taken in context, was "expressly conditional" in nature and mere political hyperbole rather than a true threat. Id. at 708. The Court reasoned that hyperbolic political speech, such as Mr. Watts' speech, is beyond the scope of the statute. Id. at 708. To arrive at this interpretation, the Court relied on the "'profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wideopen, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials.'" Id. (quoting New York Times v. Sullivan, 376 U.S. 254, 270 (1964)).

Like the comment in Watts, Mr. King's "expressly conditional" (and fantastical) Instagram post was mere political hyperbole and not a true threat. Mr. King

presented no specific, repeated, or even serious intention to cause the President harm. Mr. King did not state that he would kill the President in that moment, nor did he indicate actual plans to take the President's life. In effect, Mr. King fantasized a situation where President Trump would be punished for perceived crimes. It was a hyperbolic fantasy harkening to the guillotines of the French Revolution. Furthermore, the public nature of Mr. King's post removes it from the bounds of a true threat. It was merely a singular, untagged note attached to Mr. King's Instagram story. It was not sent directly to the President, and it was never intended to be.

In sum, Count One should be dismissed because the statute is unconstitutionally applied against him by criminalizing his protected free speech.

### 2. Count Two

Count Two alleges that Mr. King violated 18 U.S.C. § 875(c) by issuing threats to injure another person in his March 27, 2025, Facebook post. For context, in response to news of a newsworthy arrest by ICE agents, Mr. King made a statement that can be best understood in two parts:

1. Mr. King proclaimed his readiness to open fire should ICE agents come to his neighborhood: "If I see ICE agents in my neighborhood I'm opening fire"; and
2. Mr. King issued a call for unspecified others to take up arms against ICE agents, whom Mr. King believed to be acting illegally: "It's time to stop being pussies and put the second amendment to work. ICE are not real cops, they are a secret police force with no real legal authority. Kill them."

For different reasons, both parts of the statement constitute protected speech.

The first portion of post is protected speech under the First Amendment, like the statement alleged in Count One, as political hyperbole. Made in response to the news of a newsworthy arrest by ICE agents, King made a purely conditional

statement about what Mr. King would do in the event that ICE agents showed up in his neighborhood. While statement presented a less fanciful potential scenario than the hypothetical scenario contained in Count One, it was conditional, nonetheless. Mr. King's statements did not indicate any real plan to attack ICE agents. There is no evidence that Mr. King even owned any such firearm with which he could launch such an attack.

Other circumstances make it plain that the first portion of this statement contained no true threat. In United States v. O'Dwyer, the Fifth Circuit affirmed the dismissal of an indictment in which a debtor in a bankruptcy case was charged with threatening a court employee under 18 U.S.C. § 875(c). 443 Fed. Appx 18 (5th Cir. 2011). In an email, O'Dwyer stated that he had no money to refill his anti-depressant prescription and that "[m]aybe my creditors would benefit from suicide, but suppose I become 'homicidal'? Given the recent 'security breach' at 500 Poydras Street, a number of scoundrels might be at risk if I DO become homicidal." Id. at 19-20. The Fifth Circuit held that O'Dwyer's statement was not a true threat as a matter of law because it was hypothetical and conditional. Id. at 20.

Contrasting O'Dwyer is United States v. Jubert, in which the Fifth Circuit determined that several social media posts constituted true threats to bring the defendant's actions within the purview of the federal cyberstalking statute. 139 F.4th 484, 487-88 (5th Cir. 2025). Mr. Jubert was charged with his offense based on numerous social media posts over a four month period targeting another man and the man's family. Id. at 488. "Jubert's conduct escalated over time." Id. What began as

insults and negative reactions to Facebook posts, transitioned into threats and ominous posting of photos portraying the victim's home and children, and culminated with threats against the victim's life. Id. The Fifth Circuit held that these statements constituted true threats and, therefore, lacked constitutional protection. Id. at 490-92. In coming to this decision, the court considered the escalation of the numerous messages, the fearful response of the victims, the targeting of private individuals, and the specific nature of the threats. Id.

In view of cases like O'Dwyer and Jubert, Mr. King's hypothetical statement about opening fire against ICE agents does not constitute any true threat. Like the statements in O'Dwyer, the statement is conditional and hypothetical—even if couched a comment surrounding unsettling current events. Unlike the unprotected actions in Jubert, Mr. King's singular statement regarding his readiness to take personal action against ICE agents involved no escalation. The communication was made broadly to the Facebook world, and it was not intended to address any individual ICE agents. Under the circumstances, the first portion of Mr. King's Facebook statement contains no serious expression of an intent to commit unlawful violence and is, therefore, protected speech under the First Amendment.

The second portion of March 27, 2025, Facebook post described in Count Two does not constitute a threat, as it merely advocates for others to act against ICE activity. Even if such advocacy were to come under the purview of 18 U.S.C. § 875(c),[3] this statement does not extend beyond the protection of the First Amendment.

---

[3] As described below in relation to Counts Three, Four, and Five, King also submits that inducing others to violence is not an offense under 18 U.S.C. § 875(c). *Part II.B., infra.*

Incitement is among the categories of speech that are of such low value that they are not covered by the First Amendment. Chaplinsky v. New Hampshire, 315 U.S. 568, 573 (1942); Virginia v. Black, 538 U.S. 343, 359, 362 (203). Incitement describes "statements 'directed [at] producing imminent lawless action,' and likely to do so." Counterman v. Colorado, 600 U.S. 66, 73 (2023) (quoting Brandenburg v. Ohio, 395 U.S. 444, 447 (1969) (per curiam)). The state is permitted to prohibit advocacy of violence that meets those standards of imminency and likeliness. Brandenburg, 395 U.S. at 447. To avoid the constraints of the First Amendment, the government to show: (1) the speech was directed to incite lawless action, (2) the lawless action was imminent, and (3) the speech is likely to incite the lawless action. Brandenburg, 395 U.S. at 447; Counterman, 600 U.S. at 76. Merely advocating illegal acts is within the core of the First Amendment. Counterman, 600 U.S. at 76.

In Brandenburg, the Supreme Court struck down an Ohio criminal syndicalism statute as violating the First Amendment. Brandenburg was a leader of a Ku Klux Klan group who gave a broadcasted speech calling for "revengeance" against the government in Washington if it continued to suppress white people. Brandenburg, 395 U.S. at 446. The speech was given in Ohio, and seemingly no one in Washington, who could have acted on Brandenburg's advocacy, heard the speech. See id. The Court measured the statute against the First Amendment and held that the statute violated its protections. Id. at 448. The Court emphasized the distinction between advocating violent acts as necessary and preparing a group to take that violent action. Id. (quoting Noto v. United States, 367 U.S. 290, 297-98 (1961)). The

15

Ohio statute failed to draw this distinction, and since it criminalized the former, it intruded on speech that the First Amendment protects. Id. In making this distinction, the Court relied on those three factors mentioned above: intent to incite lawlessness, imminence of lawlessness, and likelihood of lawlessness. Id. at 447. Accordingly, speech that does not meet these three elements is protected under the First Amendment, as far as incitement goes.

The second part of Mr. King's Facebook post contains no threats, even if it advocates the idea that others should take up violence against ICE. However repugnant such statements may be, such advocacy fails to be a true threat under the Brandenburg test. Assuming, arguendo, that Mr. King's statement includes actual intent for unspecified others to follow his suggestion, there is no imminency to such calls for action. There was no clear recipient of the message, other than the broad Facebook audience, and there is no indication that Mr. King's platform was far-reaching. He is not speaking directly to anyone, let alone someone known to be near to ICE agents with the capability of inflicting harm. This statement plainly fails the Brandenburg test and cannot be considered incitement.

Being neither a true threat nor incitement, Mr. King's Facebook post charged in Count Two constitutes speech protected by the First Amendment.

### 3. Counts Three, Four, and Five

Additionally, like the second portion of Mr. King's Facebook post (Count Two), the Instagram posts described in Counts Three through Five do not constitute true threats. This series of posts are linked by their suggestions that some unspecified person or persons should take up arms against ICE agents. Like the statement in

16

Count Two, the call for action against ICE was directed at nobody in particular, let alone any person ready to take immediate action on Mr. King's words. Compare United States v. Wheeler, 776 F.3d 736, 746 (10th Cir.2015) (finding sufficient evidence of a threat, and where defendant's Facebook "posts [did] not simply imply that some individuals should be killed; they explicitly call for the killing of a number of individuals ... The posts [did] not merely state an imperative that some unknown third party should take violent action, instead, they call upon a specific party" to take action) (emphasis in original), with United States v. Bagdasarian, 652 F.3d 1113, 1119, 1122 (9th Cir.2011) (finding no explicit or implicit threat that defendant himself would kill President, instead finding his statements an imperative that an unknown third party take action).

Additionally, there is no threat of injury to another person found in the portion of the March 30, 2025, Instagram post (Count Four), in which Mr. King claims that "there will be hell to pay" to "anyone from [his] family" who might "stalk" his page or forward his messages. Accepting arguendo that Mr. King intended to convey some threat toward any family members, that threat is not one of inflicting injury to that other person.

The phrase "hell to pay" is an idiom dating back to the 18th century that conveys how someone will face "severe consequences or trouble for one's actions or decisions." Hell to Pay, thevillageidiom.org, https://www.thevillageidiom.org/idioms/hell-to-pay-idiom-meaning-and-origin/ (last visited August 8, 2025). The idiom is not commonly associated with threats of physical

violence but, rather, it "conveys a sense of impending trouble or difficulty that will require significant effort or sacrifice to resolve." Id.

> The idiom "hell to pay" is versatile and can be used in various situations. It can describe the aftermath of a disastrous event, the consequences of a poor decision, or the challenges of dealing with a demanding person or situation. The idiom suggests that the person or people involved will have to face the unpleasant consequences of their actions. It conveys the idea that there will be severe repercussions or a high price to be paid, emphasizing the seriousness of the situation at hand.

Id. Some examples of the phrase's common usage include:

1. After I accidentally broke my mother's favorite vase, I knew there would be hell to pay.
2. If you don't complete your assignment on time, there will be hell to pay with your professor.
3. When the company's financial scandal was uncovered, the CEO had hell to pay from the angry shareholders.

Id.

It would be absurd to believe that the "hell to pay" for breaking a vase, failing to complete an assignment on time, or the revelation of a financial scandal would include actual physical violence. Instead, the phrase indicates that significant consequences will be forthcoming, but nothing it does not connote any possibility of physical injury.

Beyond the phrase's plain meaning, in context, Mr. King's statement to family also did not imply any threat of violence. Given the five social media posts addressed by the indictment, Mr. King clearly understands how to leverage violent language when making a point. He plainly did not invoke such violent rhetoric when addressing his family. Instead, he directed toward them the same type of warning that would delivered to children, lest they break their parents' rule.

18

In sum, each of the statements contained in the posts described in Counts Three through Five constitute speech protected by the First Amendment, as they do not involve true threats of physical injury to any person. Therefore, each of these counts must be dismissed.

B. Counts Three, Four, and Five should be dismissed for failure to state an offense under 18 U.S.C. § 875(c).

Counts Three, Four, and Five should be dismissed under Federal Rule Crim. P. 12(b)(3)(B)(v) for failure to state an offense. Though Mr. King is charged in these counts with violating 18 U.S.C. § 875(c) by issuing threats against ICE agents, the statements charged in these counts contain no actual threats by Mr. King but, instead, advocacy that some unnamed others should take up arms against the perceived illegal activities of ICE agents. Because such advocacy is not criminalized by the statute listed in these counts of the indictment, these counts should be dismissed.

Section 875(c) of United States Code Title 18 states, "Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both." In contrast, a separate statute criminalizes the solicitation or inducement of another person to commit an act of violence:

> Whoever, with intent that another person engage in conduct constituting a felony that has as an element the use, attempted use, or threatened use of physical force against property or against the person of another in violation of the laws of the United States, and under circumstances strongly corroborative of that intent, solicits, commands, induces, or otherwise endeavors to persuade such other person to engage

in such conduct, shall be imprisoned not more than one-half the maximum term of imprisonment or (notwithstanding section 3571) fined not more than one-half of the maximum fine prescribed for the punishment of the crime solicited, or both; or if the crime solicited is punishable by life imprisonment or death, shall be imprisoned for not more than twenty years.

18 U.S.C. § 373(a).

The social media posts described in Counts Three, Four, and Five contain no actual threats of violence by Mr. King. At most, the social media posts could be construed as a call for other people to take up arms against ICE agents. Should the government wish to attempt to prosecute these statements, despite their free-speech protections, the chosen offense is inapplicable to the type of conduct alleged in these counts.

Because the alleged statements do not constitute criminal activity under the statute named in these counts, Counts Three, Four, and Five should all be dismissed.

## II.    MOTION FOR LEAVE TO FILE A REPLY BRIEF

Mr. King files this Motion to Dismiss based on the information provided in discovery thus far. Mr. King respectfully requests an opportunity to reply to the government's anticipated response in opposition.

## III.    CONCLUSION

In light of the foregoing, Mr. King respectfully requests that the Indictment be dismissed pursuant to Fed. R. Crim. P. 12(b). If there are any material disputes of fact, he also requests an evidentiary hearing to resolve those matters.

Respectfully submitted,

JASON D. HAWKINS
Federal Public Defender
Northern District of Texas

/ s/  Shery Kime-Goodwin
Shery Kime-Goodwin
Texas Bar No. 00792624
Assistant Federal Public Defender
525 S. Griffin St., Ste. 629
Dallas, TX 75202
214-767-2746/214-767-2886 (fax)
Email: shery_kime-goodwin @fd.org
Attorney for Mr. King

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2025, I electronically filed the foregoing

document using the Court's CM/ECF system, thereby providing service on attorneys

of record.

/ s/  Shery Kime-Goodwin
Shery Kime-Goodwin