IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | NO. 3:25-CR-189-E |
| v. | |
| ROBERT WILSON KING<br>    a/k/a Rob Gutierrez | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

The indictment charges Robert Wilson King with making six death threats on social media. Count One charges him with making a threat against the President of the United States in violation of 18 U.S.C. § 871(a), and Counts Two through Five charge him with transmitting interstate threats against ICE agents in violation of 18 U.S.C. § 875(c). Dkt. 1. Now, the defendant moves to dismiss the indictment, contending that none of his six statements constitutes a "true threat" and that they are, therefore, protected by the First Amendment. The defendant also contends that Counts Three through Five fail to state an offense because he did not personally threaten to kill ICE agents and only advocated that others do so. The Court should deny his motion.

The indictment tracks the statutory language of 18 U.S.C. §§ 871(a) and 875(c), alleges the requisite *mens rea*, and provides the defendant with notice sufficient to prepare his defense. The Supreme Court has made clear that the First Amendment does not protect "true threats." *Counterman v. Colorado*, 600 U.S. 66, 73-74 (2023). And the statements at issue—a threat demanding that the President be "put to death" and offering to "pull the trigger myself," and threats against ICE agents including, "I'm opening fire,"

"SHOOT THEM," "fucking shoot them and kill them," and "shoot those fuckin' ICE agents dead"—fall squarely within that category. At best, the defendant's arguments amount to factual defenses about interpretation and context, which must be resolved by a jury, not through pretrial motion.

## Argument and Authorities

I.   **Legal Standard**

   A.   **A motion to dismiss tests the sufficiency of the indictment, not the evidence.**

"As a motion to dismiss an indictment for failure to state an offense is a challenge to the sufficiency of the indictment, the Court must take the allegations of the indictment as true and must determine whether an offense has been stated." *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004) (cleaned up). An indictment is sufficient if it (1) sets out the elements of the offense charged, (2) fairly informs the defendant of the charges, and (3) enables him to plead double jeopardy in future prosecutions. *Hamling v. United States*, 418 U.S. 87, 117 (1974).

Although Rule 12 motions may resolve "a question of law presented in a case involving undisputed facts," *United States v. Flores*, 404 F.3d 320, 325 (5th Cir. 2005) (abrogated on other ground in *United States v. Garcia*, 707 Fed. Appx 231 (5th Cir. 2017)), the defendant's motion is based on a factual dispute—i.e., whether a jury could reasonably determine that his communications were threats sufficient to support convictions under 18 U.S.C. §§ 871(a) and 875(c). Questions of factual sufficiency are not addressed properly in a motion to dismiss but, rather, are issues for the jury. *See, e.g.*,

*United States v. Mann*, 517 F.2d 259, 267 (5th Cir. 1975) ("A defendant may not properly challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence, for an indictment returned by a legally constituted and unbiased grand jury, if valid on its face, is enough to call for trial of the charge on the merits.").

**B.     The First Amendment and True Threats**

"True threats of violence, everyone agrees, lie outside the bounds of the First Amendment's protection." *Counterman v. Colorado*, 600 U.S. 66, 72 (2023). The definition of a "true threat" has evolved. In *United States v. Morales*, the Fifth Circuit held that a statement qualifies as a "true threat" if a reasonable person would perceive it, in context, as a serious expression of intent to inflict harm, without requiring proof that the defendant subjectively recognized its threatening character. 272 F.3d 284, 287-89 (5th Cir. 2001). The Supreme Court later refined this standard. In *Elonis v. United States*, the Court rejected a negligence-only approach to § 875(c), holding that, unless a statute requires a specific *mens rea*, the government must make some showing of subjective culpability regarding the threatening nature of the communication. 575 U.S. 723, 735-741 (2015). And the Supreme Court recently confirmed the constitutional minimum in *Counterman v. Colorado*, explaining that the First Amendment requires proof only that the defendant was at least reckless—that is, that he consciously disregarded a substantial risk that his words would be understood as threats. 600 U.S. at 73, 82.

Most recently, the Fifth Circuit formalized this standard in *United States v. Jubert*, adopting a two-part test: the government must show both that (1) an objectively reasonable person would view the statement, in context, as a serious expression of intent to cause harm, and (2) that the defendant made the statement with intent to communicate a threat, or with a conscious disregard that the statement would be viewed as a threat. 139 F.4th 484, 491 (5th Cir. 2025). In other words, prosecutions require both an objective showing and proof of the defendant's conscious disregard of the threatening nature of the communication. *Id.*

Although *Counterman* and *Jubert* did not arise under §§ 871(a) or 875(c), their reasoning governs here. Both cases interpret and define the constitutional limits of prosecuting "true threats." Because §§ 871(a) and 875(c) prosecute the same category of speech—communications containing threats—this framework necessarily applies. *See United States v. Knight*, No. 23-30569, 2024 WL 909589, at *1 (5th Cir. Mar. 4, 2024) (unpublished) (acknowledging that, under *Counterman*, recklessness is the constitutionally required *mens rea* in true-threat prosecutions, including those under § 875(c)).

### C.     The elements of §§ 871(a) and 875(c) are straightforward.

To prove a violation of 18 U.S.C. § 871(a), the government must establish that: (1) the defendant knowingly wrote the words alleged to be the threat against the President as charged in the indictment; (2) that the defendant understood and meant the words written as a threat; and (3) that the defendant wrote the words knowingly and willfully,

that is, intending them to be taken seriously. *See* FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (CRIMINAL) § 2.38.

To prove a violation of 18 U.S.C. § 875(c), the government must establish that: (1) the defendant knowingly sent a message containing a threat to injure the person of another; (2) the defendant sent a "true threat"—i.e., a message with the intent to communicate a threat, or with a conscious disregard (recklessness) that the communication would be viewed as a threat; and (3) the communication was sent in interstate or foreign commerce. *See* FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (CRIMINAL) § 2.39 & Notes (2024) (explaining that § 875(c) requires interstate transmission plus a true threat and now a subjective *mens rea* of at least recklessness).

## II.   The indictment is facially valid.

Here, the indictment tracks the statutory language of §§ 871(a) and 875(c) and alleges the requisite *mens rea* under *Counterman* and *Jubert*, thus it is more than adequate under FED. R. CRIM. P. 7(c)(1). The Fifth Circuit has emphasized repeatedly that an indictment is sufficient where it "contain[s] the elements of the offense charged and fairly inform[s] a defendant of the charge against which he must defend and enable[s] him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Kay*, 359 F.3d at 742.

Here, each count of the indictment alleges quotes the alleged threat, specifies the date the statement was made, and the social media platform where it was posted. The indictment alleges that the defendant acted "knowingly and willfully" for Count One and that he acted at least with a "conscious disregard of a substantial risk that the

communications would be viewed as threats" for Counts Two through Five. Having recited the *mens rea* requirements, together with all of the other essential elements required by §§ 871(a) and 875(c), the indictment is facially valid. The defendant's contentions that his words were political hyperbole, fantasy, expressly conditional, or that they only encouraged others to take violent actions give no basis to dismiss the indictment. His proposed interpretations are belied by each statement's factual context, and are thus, at most, factual defenses that the jury should weigh at trial.

### III.     The defendant's statements constitute "true threats."

While the Court need go no further, the charged statements in this case constitute "true threats." The communications set out in the indictment are not abstract musings, political slogans, or ambiguous metaphors. This is made clear by the defendant's own words concerning his threats: "I AM SO SERIOUS," "Just wanna double down on what I said," and "Tripling down." (Dkt. 1.)

#### A.     The language is explicit and violent.

The indictment charges the defendant with making six posts on Instagram or Facebook containing the following statements:

- "I demand he [referring to the President] be put to death. I don't give a fuck anymore, give me the gun I'll pull the trigger myself. Come get me FBI. Fuck this country."

- "If I see ICE agents in my neighborhood I'm opening fire. It's time to stop being [pxxxxxx] and put the second amendment to work. ICE are not real cops, they are a secret police force with no real legal authority. Kill them."

- "My advice if ICE comes to your neighborhood: SHOOT THEM. Would you rather die fighting back or die in a foreign prison? USE YOUR SECOND AMENDMENT. NOW IS THE TIME. I AM SO SERIOUS."

- "Just wanna double down on what I said the other day: if ICE comes to your neighborhood, fucking shoot them and kill them.  Nor mercy for the Gestapo.  And if I find out anyone from family I cut off is stalking my page or someone is feeding information about what I post to, well, anyone, I will find you and there will be hell to pay"

- "Tripling down and saying shoot those fuckin' ICE agents dead.  No real legal authority and you have the right to defend yourself."

As set out above, a statement constitutes a true threat when two conditions are met: (1) an objectively reasonable person would view it, in context, as a serious expression of intent to cause harm, and (2) that the defendant sent the message with intent to communicate a threat, or with a conscious disregard that the communication would be viewed as a threat.  *Jubert*, 139 F.4th at 490-91 (applying *Counterman*).

By any measure, defendant's statements fit squarely within that category of speech.  Five of his six posts *explicitly* threaten death by firearm to the President and ICE agents ("put to death," "Kill them," "shoot them and kill them," and "shoot those fuckin' ICE agents dead").  One post *implicitly* threatens death by firearm, stating "SHOOT THEM," but does not *explicitly* specify to "shoot [them] dead" or "shoot them and kill them" as he stated in other posts.  But the context of that post leaves no doubt that the defendant's statement to "SHOOT THEM" was threatening not only violence by firearm (which alone is sufficient under the statute) but also death by firearm. This is so because the defendant followed up on his "SHOOT THEM" statement by posting, "Just wanna

double down on what I said the other day: if ICE comes to your neighborhood, fucking shoot them and kill them."

The fact that the defendant made multiple, escalating posts demonstrates that he was at least reckless as to their threatening nature. A reasonable speaker in his position could not fail to recognize that repeated statements about shooting and killing people would be taken as threats. The direct targeting and the unambiguous language together show that defendant consciously disregarded the substantial risk that his words would be received as menacing. These statements thus easily clear the bar set by *Counterman* and *Jubert*.

1. **The context reinforces, rather than undermines, their threatening nature.**

The defendant argues that his statement "demand[ing]" that the President "be put to death" and that "I'll pull the trigger myself" was "mere political hyperbole," "hypothetical," "purely fantastical," and based on a "wildly implausible conditional scenario" such that it is not a true threat. But context cuts the other way. The President survived two well-publicized assassination attempts just months prior to the defendant's post. On July 13, 2024, a gunman attempted to assassinate Donald Trump at a campaign rally near Butler, Pennsylvania. *See* https://www.reuters.com/world/us/gunfire-trump-rally-live-2024-07-14/. Two months later, on September 15, 2024, a gunman attempted to assassinate Donald Trump on his golf course in West Palm Beach, Florida. *See* https://apnews.com/hub/attempted-assassination-of-donald-trump. Once placed in this

context, a reasonable person would view the defendant's statement as a serious expression of intent to cause harm.

Moreover, the defendant's statement, "Come get me FBI," belies his argument that he was only imagining a fantasy scenario where he would volunteer "to perform the services of an executioner" following a hypothetical capital punishment trial at which the President would be convicted of treason. If one were to credit the defendant's argument, the administration of the death penalty in such a scenario would be legally justified and there would be no reason for the FBI to "Come get [him]." Indeed, the statement, "Come get me FBI" shows defendant subjectively knew that his statement was a threat and that he was willing to act on it, even if it cost him his own life ("I don't give a fuck anymore"). When read as a whole, the defendant's statement is best understood as him threatening vigilantism and extrajudicial killing.

Similarly, the context of the defendant's statements about shooting ICE agents reinforces their threatening nature. As has been widely reported in the media, the current administration's immigration enforcement efforts have been controversial, to say the least. Many have voiced opposition peacefully and within the bounds of the First Amendment. However, there is a consensus that assaults and threats against ICE agents

have increased in 2025, even though the numbers vary by source.[1] The impact of these threats has been felt by ICE agents and, although widely criticized, has led many ICE agents to wear masks to avoid being "doxxed" and having themselves and their families subjected to additional threats.[2]  This is quite different than the reaction by the crowd at a political rally that "laughed" after the speaker stated, "If they ever make me carry a rifle the first man I want to get in my sights is L.B.J." *Watts v. United States*, 394 U.S. 705, 707 (1969).

### 2.     The defendant's "hypothetical and conditional" argument fails.

Reyling on *Watts*, the defendant challenges Count Two claiming that any threat was expressly conditioned on the hypothetical situation of seeing ICE agents in his neighborhood.  However, a communication that conveys an intent to injure another person can be a true threat, even if expressed conditionally. *United States v. Bozeman*, 495 F.2d 508, 510 (5th Cir. 1974) (finding true threat even though statements "were

---

[1] For example, the White House reported an increase of 700% in assaults against ICE agents (https://www.whitehouse.gov/articles/2025/07/democrats-inspire-vicious-escalating-attacks-on-ice/) and the Department of Homeland Security reported an 8,000% increase in death threats against ICE agents (https://www.dhs.gov/news/2025/10/30/8000-increase-death-threats-against-ice-law-enforcement-they-risk-their-lives).  National Public Radio and the Los Angles Times each conducted an analysis of court records and agreed that assaults on federal officers had increased, but at a more modest rate of about 25%.  *See* https://www.npr.org/2025/10/10/nx-s1-5565146/white-house-claims-more-than-1-000-rise-in-assaults-on-ice-agents-data-says-otherwise and https://www.latimes.com/california/story/2025-12-01/dhs-1000-percent-increase-attacks-on-ice-agents-times-analysis.

[2] *See* Immigration Enforcement Frequently Asked Questions, "Why do ICE Officials wear masks?  ICE law enforcement officers wear masks to prevent doxing, which can (and has) placed them and their families at risk. All ICE law enforcement officers carry badges and credentials and will identify themselves when required for public safety or legal necessity." https://www.ice.gov/immigration-enforcement-frequently-asked-questions.

**Government's Opposition to
Defendant's Motion to Dismiss—Page 10**

phrased in conditional terms"); *United States v. Bly*, 510 F.3d 453, 459 (4th Cir. 2007) (finding statements to be true threats even though they were "grammatically conditional"); *United States v. Bellrichard,* 994 F.2d 1318, 1322–23 (8th Cir.1993) (finding threats to prosecutor to be true threats even though they were conditioned on one or more judges' sentencing decisions); *see also United States v. Sutcliffe*, 505 F.3d 944, 951 (9th Cir. 2007) ("While the conditional nature of a statement may be a factor in determining whether it constitutes a true threat, conditional language is not dispositive.") (citation omitted).

In *Sutcliffe*, the defendant was charged with threatening a process server, "If I ever see you near my family again, and I know how to stalk too, I will kill you." 505 F.3d at 951. The Court considered and rejected Sutcliffe's argument that his statements were not threats because they were conditioned on the process server appearing near him or his family again. *Id.* at 961.

Here, the defendant's threat against ICE agents in Count Two is only "grammatically conditional." As in *Sutcliffe*, the defendant in this case conditioned his threat on seeing his targets in his neighborhood. But the unremarkable "condition" that the defendant will shoot ICE agents "if" he sees them is no reason to dismiss the indictment (for how can one intentionally shoot others without seeing them first?).

### 3. The defendant's audience does not matter.

The defendant suggests the indictment should be dismissed because he did not send his threats directly to the President or any ICE agent and only posted them publicly on social media. However, the Fifth Circuit has made clear that neither the statutory

language of 18 U.S.C. § 875(c), nor the caselaw in this circuit requires that the threat be made directly to the intended target or victim. *United States v. Morales*, 272 F.3d 284, 288 (5th Cir. 2001) (*citing United States v. Myers*, 104 F.3d 76, 77-78 (5th Cir. 1997)). For example, the Fifth Circuit upheld one count of conviction under § 875(c) even though the defendant transmitted his threat against the VA and the United States Congress to an employee of a non-governmental advocacy organization in Washington, D.C. This reasoning should apply with equal force to 18 U.S.C. § 871(a), which like § 875(c), does not require that the threat be received, seen, or heard by the intended target.

Similarly, there is no requirement under § 875(c) that a statement has to name a specific person as the target of the threat. *United States v. Cox*, 957 F.2d 264, 266 (6th Cir. 1992). Indeed, it is not even necessary for the statement to explicitly threaten violence at all, provided threatened violence can be inferred from the context. *See*, *e.g.*, *United States v. Polanco*, No. 20-20585, 2022 WL 595154, at *1 (5th Cir. Feb. 28, 2022) (affirming conviction where defendant, following his conviction on drug charges, threatened investigating law enforcement officers stating "This is going to come back to you motherfuckers. You will see.").

    **4.**    **The defendant's threats are not protected as "mere advocacy."**

Citing *Brandeburg v. Ohio*, 395 U.S. 444 (1969), the defendant seeks dismissal of Counts Two through Five suggesting that they are not actionable because they merely advocate or encourage others to take violent action. In *Brandenburg*, the Supreme Court held that the First Amendment protects mere advocacy of unlawful conduct but that it does not protect speech that is "directed to inciting or producing imminent lawless action

and is likely to incite or produce such action." 395 U.S. at 447.  But simply phrasing a threat as an exhortation does not automatically convey First Amendment protection. *United States v. Wheeler*, 776 F.3d 736, 745 (10th Cir. 2015) ("Allowing defendants to seek refuge in the First Amendment simply by phrasing threats as exhortations would, as the *Turner* court observed, leave the state 'powerless against the ingenuity of threateners.'") (*citing United States v. Turner*, 720 F.3d 411, 422 (2d Cir. 2013)).  Unless no rational juror could disagree, the question of whether a statement is protected as "mere advocacy" or "incitement" should be submitted to the jury.  *See Wheeler*, 776 F.3d at 746 (remanding for retrial with proper jury instructions).

For example, in *United States v. Ziobrowski*, a district court in Massachusetts denied a motion to dismiss a § 875(c) count where the defendant posted on Twitter, "I am broke but I will scrounge and literally give $500 to anyone who kills an ice agent. @me seriously who else can pledge get in on this let's make this work."  No. CR 18-10250-DJC, 2019 WL 3306802, at *1 (D. Mass. July 23, 2019).  The court found that, when placed in context of the defendant having promoted violence against law enforcement officers over a course of months, that a reasonable jury could find the statement to be a true threat.

Here, when placed in context—especially the context of the defendant's statement "I'm opening fire" in Count One—the defendant's exhortations to unnamed others could be understood as additional veiled threats by himself.  For example, the statement in Count Five, "shoot those fuckin' ICE agent dead … you have the right to defend yourself" could easily be understood as a statement by the defendant calling and

encouraging himself, not others, to action. This statement is no different grammatically than an athlete stating "You got this" in the face of a momentous challenge. There is no unnamed "you" other than the speaker himself.

## IV. *A question for the jury.*

It is well established that the question of whether a statement is a "true threat" is a question of fact for the jury to decide. *United States v. Hunt*, 82 F.4th 129, 137 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 1396 (2024); *see also Morales*, 272 F.3d at 286–88 (holding it was for the jury to decide whether the defendant was "only joking" or whether his statements constituted true threats). Similarly, whether the defendant incited imminent lawless action under the *Brandenburg* standard by stating, "It's time … to put the second amendment to work" and "NOW IS THE TIME. I AM SO SERIOUS" should be resolved by the jury, not a on a pretrial motion.

## V. Conclusion

This Court should deny the defendant's motion to dismiss the indictment. Each count in the indictment tracks the relevant statutory language and each count is based on statement that qualifies as a true threat. The defendant's arguments that his statements were "conditional," were only meant to encourage others to take violent action, or failed to specify a named target miss the mark. The context of each statement makes clear that the defendant intended each to be a threat or that a reasonable person would perceive them as threats. Moreover, any question about whether the defendant's statements constitute true threats should be settled by submitting the question to the jury.

Respectfully submitted,

RYAN RAYBOULD
UNITED STATES ATTORNEY

*/s/ Douglas B. Brasher*
DOUGLAS B. BRASHER
Assistant United States Attorney
Texas Bar No. 24077601
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone:   214-659-8604
Facsimile:    214-659-8802
Douglas.Brasher@usdoj.gov